Daniel I. Pace
**PACE LAW OFFICES**
101 E 9th Ave, Ste 7A
Anchorage, AK 99501
Telephone: (907) 222-4003
Facsimile: (907) 222-4006
Dan@PACELAWOFFICES.com

# UNITED STATES DISTRICT COURT
# DISTRICT OF ALASKA

| | |
|---|---|
| CHRISTINE COLEMAN, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>ALASKA USA FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. 3:19-cv-00229-HRH<br><br>**CLASS ACTION COMPLAINT** |

Plaintiff, Christine Coleman, by counsel, for her Class Action Complaint against Defendant Alaska USA Federal Credit Union ("Alaska USA"), alleges as follows:

## INTRODUCTION

1. This is a civil action seeking monetary damages and restitution from Defendant Alaska USA, arising from the unfair and unconscionable assessment and collection of multiple $25 "insufficient funds fees" ("NSF Fees") on the same items.

2. Besides being deceptive, unfair, and unconscionable, this practice breaches contract promises made in Alaska USA's adhesion contracts.

3. Plaintiff and other Alaska USA customers have been injured by Alaska USA's practices. On behalf of herself and the putative class, Plaintiff seeks damages,

1

restitution, and injunctive relief for Alaska USA's breach of contract and/or unjust enrichment.

## PARTIES

4. Plaintiff is an Alaska USA customer who resides in Auburn, Washington. She is a citizen of the state of Washington.

5. Alaska USA is a federally chartered credit union with its headquarters and principal place of business located in Anchorage, Alaska. Alaska USA has $7 billion in assets and provides banking services to customers through bank branches in the state of Alaska.

## JURISDICTION

6. This Court has original jurisdiction pursuant to the Class Action Fairness Act.

7. Alaska USA regularly and systematically conducts business and provides retail banking services in this district, and provides retail banking services to customers in this district, including Plaintiff and members of the putative class.

## VENUE

8. Venue is likewise proper in this district pursuant to 28 U.S.C. § 1391 because Alaska USA is subject to personal jurisdiction in this Court and regularly conducts business within this district. Thus, many of the events giving rise to the claims asserted herein occurred and continue to occur in this district.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

### I. ALASKA USA CHARGES TWO OR MORE NSF FEES ON THE SAME ITEM

9. Alaska USA's "Account Documents" allows it to take certain steps when a bank accountholder attempts an ACH transaction, but does not have sufficient funds to cover it. Specifically, the Bank may (a) authorize the transaction and charge a *single* $25 overdraft fee ("OD Fee"); or (b) reject the transaction and charge a *single* $25 NSF Fee.

10. In contrast to its Account Documents, however, Alaska USA regularly assesses two or more NSF Fees on the *same* item.

11. Plaintiff does not dispute Alaska USA's right to reject an item and charge a *single* NSF Fee, but Alaska USA unlawfully maximizes its already profitable NSF Fees with deceptive practices that also violate the express terms of its Account Documents.

12. Specifically, Alaska USA unlawfully assesses *multiple* NSF Fees on a single Automated Clearing House ("ACH") item or check.

13. Unbeknownst to consumers, each time Alaska USA reprocesses an ACH transaction or check for payment after it was initially rejected for insufficient funds, Alaska USA chooses to treat it as a new and unique item or item that is subject to yet another NSF Fee. But Alaska USA's Account Documents never disclose that this counterintuitive and deceptive result could be possible and, in fact, states the opposite.

14. The Account Documents indicate that only a *single* NSF Fee will be charged per "item," however many times that item is reprocessed with no request from the customer to do so. An electronic item reprocessed after an initial return for

insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes.

15. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is reprocessed for payment multiple times.

16. Alaska USA's Account Documents never discloses this practice. To the contrary, the Bank's Account Documents indicate it will only charge a single NSF Fee on an item or per item.

### A. Plaintiff's Experience

17. In support of her claim, Plaintiff offers an example of an NSF Fee that should not have been assessed against their checking account. As alleged below, Alaska USA: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

18. On November 15, 2018, Plaintiff attempted a small payment to Safeway in the amount of $61.57.

19. Alaska USA rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $25 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by Alaska USA's Account Documents.

20. Unbeknownst to Plaintiff and without her request to Alaska USA to reprocess the item, however, eleven days later, on November 26, 2018, Alaska USA

4

Case 3:19-cv-00229-HRH   Document 1   Filed 08/21/19   Page 4 of 20

insufficient funds, especially through no action by the customer, cannot and does not fairly become a new, unique item for fee assessment purposes.

15. This abusive practice is not universal in the financial services industry. Indeed, major banks like Chase—the largest consumer bank in the country—do not undertake the practice of charging more than one NSF Fee on the same item when it is reprocessed. Instead, Chase charges one NSF Fee even if an item is reprocessed for payment multiple times.

16. Alaska USA's Account Documents never discloses this practice. To the contrary, the Bank's Account Documents indicate it will only charge a single NSF Fee on an item or per item.

### A. Plaintiff's Experience

17. In support of her claim, Plaintiff offers an example of an NSF Fee that should not have been assessed against their checking account. As alleged below, Alaska USA: (a) reprocessed a previously declined item; and (b) charged a fee upon reprocessing.

18. On November 15, 2018, Plaintiff attempted a small payment to Safeway in the amount of $61.57.

19. Alaska USA rejected payment of that item due to insufficient funds in Plaintiff's account and charged her a $25 NSF Fee for doing so. Plaintiff does not dispute this initial fee, as it is allowed by Alaska USA's Account Documents.

20. Unbeknownst to Plaintiff and without her request to Alaska USA to reprocess the item, however, eleven days later, on November 26, 2018, Alaska USA

processed the same item yet again, and again rejected the transaction due to insufficient funds and charged Plaintiff *another* $25 NSF Fee.

21. *In sum, Alaska USA charged Plaintiff $50 in NSF Fees to attempt to process a single payment.*

22. Plaintiff understood the payment to be a single item (which is also how it is laid out in Alaska USA's Account Documents) capable at most of receiving a single NSF Fee (if Alaska USA returned it) or a single OD Fee (if Alaska USA paid it).

## B. The Imposition of Multiple NSF Fees on a Single Item Violates Alaska USA's Express Promises and Representations

23. The Account Documents provide the general terms of Plaintiff's relationship with Alaska USA, and therein, Alaska USA makes explicit promises and representations regarding how transactions will be processed, as well as when NSF Fees may be assessed.

24. The Account Documents contain explicit terms indicating that NSF Fees will only be assessed once per item, when in fact Alaska USA regularly charges two or more NSF Fees per item even though a customer only requested the payment or transfer once.

25. Alaska USA's Account Documents indicate that a singular NSF Fee can be assessed on checks, ACH debits, and electronic payments.

26. Alaska USA's Account Documents state that it will charge $25 per item that is returned due to insufficient funds.

5

27. According to the Schedule of Fees and Charges (Ex. 1 at 10), a singular fee will be charged for each "item":

> • NSF: Check or other debit presented returned unpaid for lack of sufficient funds................................................................$25.00 per item
> • NSF ACH bill payment: Additional CheckFree® charge for ACH bill payment returned for lack of sufficient funds................................................................$25.00 per item

28. The Fee Schedule, therefore, states that a <u>single</u> fee will be assessed per "item."

29. The Fee Schedule also states that single fee will be assessed when an accountholder creates an overdraft:

> Courtesy Pay/Overdraft (OD) Service: Check or other debit presented and paid against insufficient funds (fee based on amount of overdraft)
> $0.00 - $5.00 ........................................................................................ NC
> $5.01 - $10.00..............................................................................$5.00
> $10.01 - $15.00 ......................................................................... $10.00
> $15.01 - $20.00 ......................................................................... $15.00
> $20.01 - $25.00 ......................................................................... $20.00
> $25.01 or more.......................................................................... $25.00

30. The Fee Schedule makes clear that, for all transaction types (whether debit card, check, ACH, or other transaction), only a <u>single</u> NSF Fee or OD Fee can be charged. Indeed, more than one OD Fee is impossible for transactions like debit card transactions, which can only possibly be paid or rejected one time. Alaska USA uses identical language to describe "overdraft" fees and "lack of sufficient fund" fees, even though it is impossible for "paid items" to incur more than one fee.

31. Most of the transaction and fee types covered by the Fee Schedule can only occur once, and there is no warning that a certain type of transaction or fee can happen

6

more than once.  This is yet another indication to reasonable consumers that the contract means a single NSF Fee may be charged per item.

32. Further, the Deposit Agreement, (Ex. 1 at 9), states that at most a single NSF Fee may be assessed on "items":

> Nonsufficient Funds (NSF) Activity. If available funds are not in the account when a debit is presented for payment, and Overdraft Protection and/or Courtesy Pay are not available, the item will be returned unpaid. A fee will be assessed for each returned item.

33. The same "item" on an account cannot conceivably become a new one each time it is rejected for payment then reprocessed, especially when—as here—Plaintiff took no action to resubmit it.

34. There is zero indication anywhere in the Account Documents that the same "item" is eligible to incur multiple NSF Fees.  Indeed, to the contrary, the statement that "additional merchant fees may also apply" is an express promise that additional fees can only possibly come from the merchant, not from Alaska USA.

35. Even if Alaska USA reprocesses an instruction for payment, it is still the same "item."  Its reprocessing is simply another attempt to effectuate an account holder's original order or instruction.

36. The disclosures described above never discuss a circumstance where Alaska USA may assess multiple NSF Fees for a single check or ACH transaction that was returned for insufficient funds and later reprocessed one or more times and returned again.

7

37. In sum, Alaska USA promises that one $25 NSF Fee will be assessed per electronic payment or check, and these terms must mean all iterations of the same instruction for payment. As such, Alaska USA breached the contract when it charged more than one fee per item.

38. Reasonable consumers understand any given authorization for payment to be one, singular "item," as those terms are used in Alaska USA's Account Documents.

39. Taken together, the representations and omissions identified above convey to customers that all submissions for payment of the same transaction will be treated as the same "item," which it will either authorize (resulting in an overdraft item) or reject (resulting in a returned item) when it decides there are insufficient funds in the account. Nowhere does Alaska USA disclose that it will treat each reprocessing of a check or ACH payment as a separate item, subject to additional fees, nor do Alaska USA customers ever agree to such fees.

40. Customers reasonably understand, based on the language of the Account Documents, that its reprocessing of checks or ACH payments are simply additional attempts to complete the original order or instruction for payment, and as such, will not trigger NSF Fees. In other words, it is always the same item or transaction.

41. Banks and credit unions like Alaska USA that employ this abusive practice know how to plainly and clearly disclose it. Indeed, other banks and credit unions that do engage in this abusive practice disclose it expressly to their account holders—something Defendant here never did.

42. For example, First Citizens Bank, a major institution in the Carolinas, engages in the same abusive practice as Alaska USA, but at least expressly states:

> Because we may charge a service fee for an NSF item each time it is presented, **we may charge you more than one service fee for any given item**. All fees are charged during evening posting. When we charge a fee for NSF items, the charge reduces the available balance in your account and may put your account into (or further into) overdraft.

First Citizens Bank Deposit Account Agreement, Fees for NSF Items (emphasis added).

43. First Hawaiian Bank engages in the same abusive practices as Defendant, but at least currently discloses it in its online banking agreement, in all capital letters, as follows:

> YOU AGREE THAT MULTIPLE ATTEMPTS MAY BE MADE TO SUBMIT A RETURNED ITEM FOR PAYMENTAND THAT **MULTIPLE FEES MAY BE CHARGED TO YOU AS A RESULT OF A RETURNED ITEM AND RESUBMISSION**.

Terms and Conditions of FHB Online Services – First Hawaiian Bank, Amendment of Terms and Conditions Bill Payment Service, ¶13 (September 2018) (emphasis added).

44. Klein Bank similarly states in its online banking agreement:

> [W]e will charge you an NSF/Overdraft Fee each time: (1) a Bill Payment (electronic or check) is submitted to us for payment from your Bill Payment Account when, at the time of posting, your Bill Payment Account is overdrawn, would be overdrawn if we paid the item (whether or not we in fact pay it) or does not have sufficient available funds; or (2) we return, reverse, or decline to pay an item for any other reason authorized by the terms and conditions governing your Bill Payment Account. We will charge an NSF/Overdraft Fee as provided in this section regardless of the number of times an item is submitted or resubmitted to us for payment, and regardless of whether we pay the item or return, reverse, or decline to pay the bill payment.

Klein Bank Consumer and Small Business Online Access Agreement, Bill Pay Service ¶H.

9

45. First Financial Bank in Ohio, aware of the commonsense meaning of "item," clarifies the meaning of that term to its accountholders:

> Merchants or payees may present an item multiple times for payment if the initial or subsequent presentment is rejected due to insufficient funds or other reason (representment). Each presentment is considered an item and will be charged accordingly.[1]

46. Alaska USA provides no such disclosures, and in so doing, deceives its accountholders.

## C. The Imposition of Multiple NSF Fees on a Single Transaction Breaches Alaska USA's Duty of Good Faith and Fair Dealing

47. Parties to a contract are required not only to adhere to the express conditions in the contract, but also to act in good faith when they are invested with a discretionary power over the other party. In such circumstances, the party with discretion is required to exercise that power and discretion in good faith. This creates an implied promise to act in accordance with the parties' reasonable expectations and means that Alaska USA is prohibited from exercising its discretion to enrich itself and gouge its customers. Indeed, Alaska USA has a duty to honor transaction requests in a way that is fair to Plaintiff and its other customers and is prohibited from exercising its discretion to pile on ever greater penalties on the depositor. Here—in the adhesion agreements Alaska USA foisted on Plaintiff and its other customers—Alaska USA has provided itself numerous discretionary powers affecting customers' credit union accounts. But instead of

---

[1] https://www.bankatfirst.com/content/dam/first-financial-bank/eBanking_Disclosure_of_Charges.pdf (last accessed May 2, 2019).

exercising that discretion in good faith and consistent with consumers' reasonable expectations, Alaska USA abuses that discretion to take money out of consumers' account without their permission and contrary to their reasonable expectations that they will not be charged multiple fees for the same transaction.

48. When Alaska USA charges multiple NSF Fees, it uses its discretion to define the meaning of "item" in an unreasonable way that violates common sense and reasonable consumer expectations. Alaska USA uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

49. In addition, Alaska USA exercises its discretion in its own favor—and to the prejudice of Plaintiff and its other customers—when it reprocesses a transaction when it knows a customer's account lacks funds and then charges additional NSF Fees on a single item. Further, Alaska USA abuses the power it has over customers and their bank accounts and acts contrary to his reasonable expectations under the Account Documents. This is a breach of the Bank's implied covenant to engage in fair dealing and act in good faith.

50. It was bad faith and totally outside of Plaintiff's reasonable expectations for Alaska USA to use its discretion to assess two or three NSF Fees for a single attempted payment.

51. When Alaska USA charges multiple NSF Fees, the bank uses its discretion to define contract terms in an unreasonable way that violates common sense and reasonable consumer expectations. Alaska USA uses its contractual discretion to set the meaning of those terms to choose a meaning that directly causes more NSF Fees.

11

52. Moreover, Alaska USA provides itself discretion to refuse to reprocess transactions that are initially rejected. It abuses that discretion when it repeatedly reprocesses transactions and charges NSF Fees each time.

## CLASS ALLEGATIONS

53. Plaintiff brings this action on behalf of herself and all others similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure. This action satisfies the numerosity, commonality, typicality, adequacy, predominance, and superiority requirements of Rule 23. The proposed class is defined as:

> All Alaska USA checking account holders who, during the applicable statute of limitations, were charged more than one NSF Fee on the same item.

54. Plaintiff brings this action on their own behalf and on behalf of all others similarly situated pursuant to Federal Rule 23. Excluded from the class are Alaska USA, its subsidiaries and affiliates, its officers, directors, the members of their immediate families, and any entity in which Defendant has a controlling interest, to include the legal representatives, heirs, successors, or assigns of any such excluded party. Also excluded are the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

55. Plaintiff reserves the right to modify or amend the definition of the proposed Class if necessary before this Court determines whether certification is appropriate.

56. This case is properly brought as a class action under Federal Rule 23(a) and (b)(3), and all requirements therein are met for the reasons set forth in the following paragraphs.

57. *Numerosity under Fed. R. Civ. P. 23(a)(1)*. The members of the Class are so numerous that separate joinder of each member is impracticable. Upon information and belief, and subject to class discovery, the Class consists of many thousands of members, the identity of whom are within the exclusive knowledge of and can be ascertained only by resort to Alaska USA's records. Through the evaluation of Alaska USA's data, it is possible to identify all members of the Class and the amount of improper fees paid by each Class member. Such specific information is not otherwise available to Plaintiff, but must be maintained pursuant to federal law, and is subject to suitable discovery.

58. *Commonality under Fed. R. Civ. P. 23(a)(2)*. There are numerous questions of law and fact common to the Class relating to Alaska USA's business practices challenged herein, and those common questions predominate over any questions affecting only individual Class members. The common questions include, but are not limited to:

    a) Whether Alaska USA improperly charged more than one NSF Fee on the same item; and

    b) Whether Plaintiff and other members of the Class have sustained damages as a result of Alaska USA's assessment and collection of the improper fees, and the proper measure of damages.

59.     *Typicality under Fed. R. Civ. P. 23(a)(3)*.  Plaintiff's claims are typical of the claims of the other Class members in that they arise out of the same wrongful business practice by Alaska USA, as described herein.

60.     *Adequacy of Representation under Fed. R. Civ. P. 23(a)(4)*.  Plaintiff is an adequate representatives of the Class in that they have Alaska USA checking accounts and have suffered damages as a result of Alaska USA's assessment and collection of improper fees.  In addition:

      a)    Plaintiff is committed to the vigorous prosecution of this action on behalf of herself and all others similarly situated and have retained competent counsel experienced in the prosecution of class actions and, in particular, class actions on behalf of consumers against financial institutions;

      b)    There is no hostility of interest between Plaintiff and the unnamed Class members;

      c)    Plaintiff anticipates no difficulty in the management of this litigation as a class action; and

      d)    Plaintiff's legal counsel have the financial and legal resources to meet the substantial costs and legal work associated with this type of litigation.

61.     *Predominance under Fed. R. Civ. P. 23(b)(3)*. The questions of law and fact common to the Class as set forth in the "commonality" allegation above predominate

over any individual issues. As such, the "commonality" allegations are restated and incorporated herein by reference.

62. *Superiority under Fed. R. Civ. P. 23(b)(3).* A class action is superior to other available methods and highly desirable for the fair and efficient adjudication of this controversy. Since the amount of each individual Class member's claim is very small relative to the complexity of the litigation and since the financial resources of Alaska USA are enormous, no Class member could afford to seek legal redress individually for the claims alleged herein. Therefore, absent a class action, the Class members will continue to suffer losses and Alaska USA's misconduct will proceed without remedy. In addition, even if Class members themselves could afford such individual litigation, the court system could not. Given the complex legal and factual issues involved, individualized litigation would significantly increase the delay and expense to all parties and to the Court. Individualized litigation would also create the potential for inconsistent or contradictory rulings. By contrast, a class action presents far fewer management difficulties, allows claims to be heard which might otherwise go unheard because of the relative expense of bringing individual lawsuits, and provides the benefits of adjudication, economies of scale and comprehensive supervision by a single court.

63. All conditions precedent to bringing this action have been satisfied and/or waived.

# FIRST CLAIM FOR RELIEF
## (Breach of Contract and Breach of the Covenant of Good Faith and Fair Dealing)
## (On Behalf of Plaintiff and the Class)

64. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

65. Plaintiff and Alaska USA have contracted for bank account deposit, checking, ATM, and debit card services.

66. Alaska USA mischaracterized in the Account Documents its true NSF Fee practices and breached the express terms of the Account Documents.

67. No contract provision authorizes Alaska USA to charge more than one NSF Fee on the same item.

68. Under the law of Alaska, good faith is an element of every contract, including contracts pertaining to the assessment of NSF Fees. Good faith is also mandated by the Uniform Commercial Code ("UCC") which covers banking transactions. Whether by common law or statute, all contracts impose upon each party a duty of good faith and fair dealing. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—not merely the letter—of the bargain. Put differently, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form. Evading the spirit of the bargain and abusing the power to specify terms constitute examples of bad faith in the performance of contracts.

16

69. Subterfuge and evasion violate the obligation of good faith in performance even when an actor believes their conduct to be justified. A lack of good faith may be overt or may consist of inaction, and fair dealing may require more than honesty. Examples of violations of good faith and fair dealing are willful rendering of imperfect performance, abuse of a power to specify terms, and interference with or failure to cooperate in the other party's performance.

70. Alaska USA has breached the covenant of good faith and fair dealing through its NSF Fee policies and practices as alleged herein.

71. Alaska USA harms consumers by abusing its contractual discretion in a number of ways which no reasonable customer would anticipate.

72. Plaintiff and members of the Class have performed all, or substantially all, of the obligations imposed on them under the Account Documents.

73. Plaintiff and members of the Class have sustained damages as a result of Alaska USA's breach of the contract and breach of the covenant of good faith and fair dealing.

### SECOND CLAIM FOR RELIEF
**(Unjust Enrichment)**
**(On Behalf of Plaintiff and the Class)**

74. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

75. Plaintiff (on behalf of herself and the Class) asserts a common law claim for unjust enrichment. This claim is brought solely in the alternative and Plaintiff concedes that this claim cannot survive if their contractual claims succeed. If, however,

17

the parties' contracts are deemed unconscionable or otherwise unenforceable for any reason, unjust enrichment will dictate that Alaska USA disgorge all improperly assessed NSF Fees.

76. By means of Alaska USA's wrongful conduct alleged herein, Alaska USA knowingly assessed fees upon Plaintiff and the members of the Class that are unfair, unconscionable, and oppressive.

77. Alaska USA knowingly received and retained wrongful benefits and funds from Plaintiff and the members of the Class. In so doing, Alaska USA acted with conscious disregard for the rights of Plaintiff and the members of the Class.

78. As a result of Alaska USA's wrongful conduct as alleged herein, Alaska USA has been unjustly enriched at the expense of, and to the detriment of, Plaintiff and the members of the Class.

79. Alaska USA's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

80. Under the common law doctrine of unjust enrichment, it is inequitable for Alaska USA to be permitted to retain the benefits it received, and is still receiving, without justification, from the imposition of NSF Fees on Plaintiff and members of the Class in an unfair, unconscionable, and oppressive manner. Alaska USA's retention of such funds under circumstances making it inequitable to do so constitutes unjust enrichment.

81. The financial benefits derived by Alaska USA rightfully belong to Plaintiff and the members of the Class. Alaska USA should be compelled to disgorge in a

common fund for the benefit of Plaintiff the and members of the Class all wrongful or inequitable proceeds received. A constructive trust should be imposed upon all wrongful or inequitable sums received by Alaska USA traceable to Plaintiff and the members of the Class.

82. Plaintiff and the members of the Class have no adequate remedy at law.

## THIRD CLAIM FOR RELIEF
### (Violation of Alaska's Unfair Trade Practices Act, AS 45.50.471)
### (On Behalf of Plaintiff and the Class)

83. Plaintiff incorporates the preceding allegations by reference as if fully set forth herein.

84. Alaska USA FCU engaged in an unfair or deceptive act or practice when Alaska USA FCA misrepresented and/or omitted in the account documents its true NSF Fee practices and breached the express terms of the account documents.

85. These acts or practices occurred in the conduct of trade or commerce.

86. Plaintiff suffered an ascertainable loss of money or property as a result of the deceptive or unfair acts or practices.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff and the Class demand a jury trial on all claims so triable and judgment including the following:

1. Certification of the Class under Rule 23;

2. Restitution of all monies lost by Plaintiff and the Class as a result of the wrongs alleged herein in an amount to be determined at trial;

3. Disgorgement of the ill-gotten gains derived by Defendant from its misconduct;

4. Actual damages in an amount proven at trial;

5. Treble damages pursuant to AS 45.50.531;

6. Punitive and exemplary damages;

7. Declaratory and injunctive relief;

8. Pre-judgment interest at the maximum rate permitted by applicable law;

9. Reimbursement of all fees, expenses, and costs of Plaintiff in connection with this action, including reasonable attorneys' fees pursuant to applicable law; and

10. Such other relief as this Court deems just and proper.

Dated: August 22, 2019.

Respectfully submitted,

/s/ Daniel Pace
Daniel I. Pace
**PACE LAW OFFICES**
101 E 9th Ave, Ste 7A
Anchorage, AK 99501
Telephone: (907) 222-4003
Facsimile: (907) 222-4006
Dan@PaceLawOffices.com

*Attorney for Plaintiff and the putative class*