Kevin M. Cuddy (Bar No. 0810062)
STOEL RIVES LLP
510 L Street, Suite 500
Anchorage, AK 99501-1959
Tel.    (907) 277-1900
Email: kevin.cuddy@stoel.com

Stuart M. Richter (applying *pro hac vice*)
Andrew J. Demko (applying *pro hac vice*)
KATTEN MUCHIN ROSENMAN LLP
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Tel.    (310) 788-4617
Email: stuart.richter@katten.com
        andrew.demko@katten.com

Attorneys for Defendant Alaska USA Federal Credit Union

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| CHRISTINE COLEMAN, an individual on behalf of herself and all others similarly situated,<br><br><br>Plaintiff,<br><br>vs.<br><br>ALASKA USA FEDERAL CREDIT UNION,<br><br>Defendant. | Case No. 3:19-cv-00229-HRH<br><br><br>**DEFENDANT ALASKA USA FEDERAL CREDIT UNION'S MOTION TO COMPEL INDIVIDUAL ARBITRATION** |

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

# TABLE OF CONTENTS

**Page**

I.  BRIEF STATEMENT OF REQUESTED RELIEF ................................................. 1

II.  INTRODUCTION ................................................................................................. 1

III.  BACKGROUND ................................................................................................... 2

    A.  Plaintiff Opened an Account with Alaska USA Subject to the Terms of the Account Agreement. ............................................................................. 2

    B.  The Parties Agreed to Arbitrate All Disputes. ............................................. 3

    C.  Plaintiff's Claims. ........................................................................................ 5

IV.  THE COURT SHOULD COMPEL ARBITRATION ........................................... 5

    A.  The FAA and Its Policy Favors Arbitration ................................................ 5

    B.  Plaintiff's Claims Are Covered by the Arbitration Agreement. .................. 6

    C.  To the Extent Plaintiff Disputes the Existence, Validity, or Scope of the Arbitration Agreement, the Arbitrator Must Decide those Issues.......... 7

    D.  If the Court Chooses to Decide Whether an Agreement to Arbitrate Exists, Then It Should Find Plaintiff Agreed to Arbitrate as a Matter of Law................................................................................................................ 8

        1.  Plaintiff agreed to the arbitration provision by maintaining her account. ................................................................................................ 8

        2.  Any argument that singles out the arbitration provision is preempted. ........................................................................................ 11

    E.  If the Court Chooses to Decide Whether an Agreement to Arbitrate Exists, Then It Should Find the Arbitration Provision Is Valid and Enforceable.................................................................................................. 12

        1.  The arbitration provision is not procedurally unconscionable......... 13

        2.  The arbitration provision is not substantively unconscionable........ 14

    F.  The Court Should Dismiss This Case Pending Arbitration ........................ 15

V.  CONCLUSION ................................................................................................... 16

i

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ackerberg v. Citicorp USA, Inc.*,
  898 F. Supp. 2d 1172 (N.D. Cal. Oct. 16, 2012) ........................................................ 10

*Alaska Int'l Const., Inc. v. Earth Movers of Fairbanks, Inc.*,
  697 P.2d 626 (Alaska 1985)........................................................................................ 13

*Alli v. ASRC Energy Servs., LLC*,
  No. 3:16-cv-00280-TMB, 2017 WL 9854547 (D. Alaska Sept. 29,
  2017) ........................................................................................................................... 12

*Allied-Bruce Terminix Cos. v. Dobson*,
  513 U.S. 265 (1995)....................................................................................................... 6

*Am. Express Co. v. Italian Colors Rest.*,
  570 U.S. 228 (2013)....................................................................................................... 5

*AT & T Techs., Inc. v. Commc'ns Workers of Am.*,
  475 U.S. 643 (1986)....................................................................................................... 6

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011)............................................................................... 6, 11, 12, 14, 15

*Brennan v. Opus Bank*,
  796 F.3d 1125 (9th Cir. 2015) ...................................................................................... 7

*Coppock v. Citigroup, Inc.*,
  No. 11-1984, 2013 WL 1192632 (W.D. Wash. Mar. 22, 2013)................................... 10

*Cordas v. Uber Techs., Inc.*,
  228 F. Supp. 3d 985 (N.D. Cal. 2017) ........................................................................ 10

*Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp.*,
  642 F.3d 849 (9th Cir. 2011) ...................................................................................... 15

*Doctor's Assocs., Inc. v. Casarotto*,
  517 U.S. 681 (1996).............................................................................................. 11, 12

ii

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

*Dorman v. Charles Schwab Corp.*,
No. 18-15281, ___ F. App'x __, 2019 WL 3939644 (9th Cir. Aug. 20,
2019) ............................................................................................................. 9

*Epp-Stowers v. Uber Techs., Inc.*,
No. 16-cv-06652-RS, 2019 WL 3430566 (N.D. Cal. July 30, 2019) ........................... 9

*Galilea, LLC v. AGCS Marine Ins. Co.*,
879 F.3d 1052 (9th Cir. 2018) ................................................................................. 8

*Garcia v. Dell, Inc.*,
905 F. Supp. 2d 1174 (S.D. Cal. 2012) ...................................................................... 8

*Hudson v. Citibank (South Dakota) NA*,
387 P.3d 42 (Alaska 2016) ..................................................................................... 12

*Mohamed v. Uber Techs., Inc.*,
848 F.3d 1201 (9th Cir. 2016) .................................................................................. 7

*Momot v. Mastro*,
652 F.3d 982 (9th Cir. 2011) ................................................................................... 7

*Moule v. United Parcel Serv. Co.*,
No. 1:16-cv-00102-JLT, 2016 WL 3648961 (E.D. Cal. July 7, 2016) ....................... 10

*Municipality of Anchorage v. Locker*,
723 P.2d 1261 (Alaska 1986) .................................................................................. 13

*Nguyen v. Barnes & Noble Inc.*,
763 F.3d 1171 (9th Cir. 2014) ................................................................................ 11

*Nicdao v. Chase Home Finan.*,
839 F. Supp. 2d 1051 (D. Alaska 2012) ................................................................... 13

*O'Connor v. Uber Techs., Inc.*,
904 F.3d 1087 (9th Cir. 2018) ................................................................................ 12

*OK Lumber Co., Inc. v. Alaska R.R. Corp.*,
123 P.3d 1076, 1081 (Alaska 2005) ......................................................................... 13

*Organ v. Conner*,
792 F.Supp. 693 (D. Alaska 1992) ..................................................................... 13, 14

iii

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

*Robinson v. Faegre Baker Daniels LLP*,
No. 3:13-cv-0086-HRH, 2014 WL 1277226 (D. Alaska Mar. 26, 2014)...................... 7

*Snead v. Wright*,
No. 3:19-cv-00092 JWS, 2019 WL 3412906 (D. Alaska July 28, 2019)................... 12

*Sparling v. Hoffman Constr. Co.*,
864 F.2d 635 (9th Cir. 1988) ...................................................................................... 15

*Weber v. Amazon.com, Inc.*,
No. CV 17-8868-GW(Ex), 2018 WL 6016975 (C.D. Cal. June 4, 2018) ................. 10

*West v. Uber Techs.*,
No. 18-CV-3001-PSG-GJS, 2018 WL 5848903 (C.D. Cal. Sept. 5,
2018) ............................................................................................................................... 9

*Zaborowski v. MHN Gov't Servs., Inc.*,
936 F. Supp. 2d 1145 (N.D. Cal. 2013) ...................................................................... 14

## Statutes

9 U.S.C. § 2 ............................................................................................................................ 5

Alaska's Unfair Trade Practices Act ............................................................................. 1, 5, 6

Federal Arbitration Act..................................................................................................*passim*

## Other Authorities

AAA, Consumer Arbitration Rules, Rule 14.................................................................. 7, 8

iv

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

## I. BRIEF STATEMENT OF REQUESTED RELIEF

Defendant Alaska USA Federal Credit Union ("Alaska USA") hereby moves for an order compelling individual, non-class arbitration of the claims asserted by plaintiff Christine Coleman ("Plaintiff") and dismissing this case pending the arbitration. This Motion is brought pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1-16, on the ground that Plaintiff's claims are subject to mandatory binding individual arbitration.

Pursuant to the Court's "Order re Motion to Dismiss" (Dkt. 4), Alaska USA certifies that its counsel met and conferred with Plaintiff's counsel prior to the filing of this Motion to determine whether the Motion could be avoided. The parties were unable to agree that the Complaint is curable by a permissible amendment and Plaintiff opposes the relief requested herein.

## II. INTRODUCTION

This case arises out of Plaintiff's challenges to Alaska USA's practice of assessing a $25 non-sufficient funds ("NSF") fee every time a merchant or payee re-submits a check or Automated Clearing House ("ACH") payment that was rejected previously by Alaska USA. Plaintiff alleges this practice is contrary to the terms of Alaska USA's Share Account Disclosure Statement (the "Account Agreement") and has sued Alaska USA for breach of contract, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of Alaska's Unfair Trade Practices Act, AS 45.50.471.

Alaska USA denies that it acted wrongfully or otherwise breached the terms of the Account Agreement. However, the validity of Plaintiff's claims must be decided in arbitration, not in this Court. As a member of Alaska USA, Plaintiff is bound by the terms

1

of her Account Agreement, which provides that "all claims or controversies arising between you [Plaintiff] and the Credit Union [Alaska USA] shall be subject to arbitration." The arbitration provision was added to the Account Agreement in February 2019. Although the terms of the Account Agreement may be amended at any time, with or without notice, Plaintiff was given notice of the change. On May 6, 2019, a "pop up" notice was added to the log in page of the Alaska USA online banking system, "UltraBranch," notifying members that the Account Agreement had been modified. It included hyperlinks to both agreements. Plaintiff navigated to pages on UltraBranch on May 6 and May 8, 2019 and therefore saw the pop up notification.

Because Plaintiff received the notice and continued banking with Alaska USA, her claims are subject to individual arbitration. This case should be dismissed pending completion of the arbitration.

## III. BACKGROUND

### A. Plaintiff Opened an Account with Alaska USA Subject to the Terms of the Account Agreement.

Alaska USA is a federally-chartered credit union. Plaintiff is a member of Alaska USA and as such, she is a party to Alaska USA's Account Agreement. Complaint ("Compl.") ¶¶ 2, 23, 65. The Account Agreement provides that "[c]hanges to the terms and conditions of accounts may occur from time to time and do not require member approval." Declaration of Keith Keller ("Keller Decl.") ¶ 4, Exhibit ("Ex.") 1 at p. 2.[1]

---

[1] Plaintiff mistakenly attached to her Complaint the Share Account Disclosure Statement for Business Organization, Association, and Public Unit. *See* Compl., Ex. 1.

## B. The Parties Agreed to Arbitrate All Disputes.

In February 2019, Alaska USA revised its Account Agreement. Among other changes, the new Account Agreement added an arbitration provision, which provides as follows:

### ARBITRATION AND DISPUTE RESOLUTION

To the extent allowed by law, all claims or controversies arising between you and the Credit Union shall be subject to arbitration. **ARBITRATION IS FINAL AND BINDING ON THE PARTIES AND SUBJECT TO ONLY VERY LIMITED REVIEW BY A COURT. IN ARBITRATION THE PARTIES ARE WAIVING THEIR RIGHT TO LITIGATE IN COURT, INCLUDING THEIR RIGHT TO A JURY TRIAL. IF YOU HAVE ANY QUESTIONS ABOUT ARBITRATION, CONSULT AN ATTORNEY OR THE AMERICAN ARBITRATION ASSOCIATION. YOU AGREE AND UNDERSTAND (I) THAT YOU AND WE ARE BOTH GIVING UP THE RIGHT TO TRIAL BY JURY AND (II) THAT YOU AND WE ARE PRECLUDED FROM PARTICIPATING IN OR BEING REPRESENTED IN ANY CLASS OR REPRESENTATIVE ACTION OR JOINING OR CONSOLIDATING THE CLAIMS OF OTHER PERSONS (THE "CLASS ACTION WAIVER").**

### ARBITRATION PROVISIONS:

**a. Binding arbitration:** At the request of either you or the Credit Union, binding arbitration under the Federal Arbitration Act will be used to resolve any claim or controversy ("Dispute") between or among us and our assigns arising out of or relating in any way to this agreement, this arbitration agreement ("arbitration clause"), or any related agreements or instruments which cover any of your loans, products or services you have or have had in the past with the Credit Union ("Related Documents"). This also includes a Dispute based on or arising from an alleged tort or any alleged statutory or regulatory violation.

*Id*. at p. 13 (emphasis in original). The arbitration provision also contains a section addressing the interpretation of the "class action waiver":

> **Interpretation of this agreement and the arbitration clause:** The validity and effect of the Class Action Waiver may be determined only by a court and not an arbitrator. You and we both acknowledge that the Class Action Waiver is a material and essential provision to the arbitration of disputes between us and is non-severable from the agreement to arbitrate…. **YOU AND WE ACKNOWLEDGE AND AGREE THAT UNDER NO CIRCUMSTANCES WILL A CLASS ACTION BE ARBITRATED. THE ARBITRATOR MAY AWARD RELIEF ONLY ON AN INDIVIDUAL (NON-CLASS, NON-REPRESENTATIVE) BASIS.** Aside from the validity and effect of the Class Action Waiver, the arbitrator will have the authority to resolve any other Dispute regarding the terms of this agreement, this arbitration clause or Related Documents, including any claim or controversy regarding the arbitrability of any Dispute…. Notwithstanding the applicability of any other law to this agreement, the arbitration clause, or Related Documents between or among the parties, the Federal Arbitration Act, 9 U.S.C. § 1 et seq., will govern the construction and interpretation of this arbitration clause.

*Id.* at p. 14.

Although it was not required to give notice of changes to the Account Agreement, Alaska USA notified its members of the implementation of the arbitration provision. On May 6, 2019, a "pop up" notice was added to the log-in page of UltraBranch, the Alaska USA online banking system. Keller Decl. ¶ 5. The pop up stated "The Share Account Disclosure Statements have been updated. Please click the applicable link below to review the current terms and conditions." *Id.* The pop up also included a hyperlink to the Account Agreement. *Id.* Members were required to close the pop up to navigate to their online banking pages. *Id.* Thus, anyone who used UltraBranch on or after May 6, 2019 had to see the pop up notification. *Id.*

According to Alaska USA's records, Plaintiff navigated to pages on UltraBranch on May 6 and May 8, 2019. *Id.* ¶ 6. Thus, she saw the pop up notice and, at a minimum, elected to close it and proceed to her account through UltraBranch. Accordingly, Plaintiff received

4

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

the updated Account Agreement.  Thereafter, Plaintiff continued to maintain an account at Alaska USA.

### C.    Plaintiff's Claims.

Plaintiff asserts four claims for: breach of contract and the covenant of good faith and fair dealing, unjust enrichment, and violation of Alaska's Unfair Trade Practices Act, AS 45.50.471. She alleges Alaska USA breached its Account Agreement and the covenant of good faith and fair dealing either by charging NSF fees on items that have been rejected and then re-submitted for payment and/or by mischaracterizing in the Account Agreement its true NSF fee practices. Compl. ¶¶ 64-73. She was assessed a purportedly improper NSF fee on November 26, 2018. *Id.* ¶ 20. Plaintiff also alleges Alaska USA has been unjustly enriched by knowingly receiving and retaining such alleged wrongful benefits from her and the putative class members. *Id.* ¶¶ 74-82. She further claims that Alaska USA engaged in an unfair or deceptive act or practice by misrepresenting and/or omitting its true NSF fee practices in the Account Agreement.  *Id.* ¶¶ 83-86.

## IV.    THE COURT SHOULD COMPEL ARBITRATION

### A.    The FAA and Its Policy Favors Arbitration.

The arbitration provision provides that "binding arbitration under the Federal Arbitration Act will be used to resolve any claim or controversy [] between or among us . . ." Keller Decl. ¶ 4, Ex. 1 at p. 13. The FAA provides that arbitration provisions "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Congress enacted the FAA "in response to widespread judicial hostility to arbitration." *Am. Express Co. v. Italian Colors Rest.*, 570

5

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

U.S. 228, 232 (2013); *Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 270 (1995) (stating the "basic purpose of the Federal Arbitration Act is to overcome courts' refusal to enforce agreements to arbitrate"). It thus reflects "both a liberal federal policy favoring arbitration and the fundamental principal that arbitration is a matter of contract." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011).

**B.      Plaintiff's Claims Are Covered by the Arbitration Agreement.[2]**

Plaintiff agreed that "all claims or controversies arising between" her and Alaska USA "shall be subject to arbitration", including "any claim or controversy ('Dispute') between or among us and our assigns arising out of or relating in any way to this agreement, this arbitration agreement [], or any related agreements or instruments which cover any of your loans, products or services you have or have had in the past with the Credit Union []. This also includes a Dispute based on or arising from an alleged tort or any alleged statutory or regulatory violation." Keller Decl., ¶ 4, Ex. 1 at p. 13. Accordingly, Plaintiff cannot dispute that her claims for breach of the Account Agreement, breach of the covenant of good faith and fair dealing, unjust enrichment, and violation of Alaska's Unfair Trade Practices Act (based on Alaska USA's alleged breach of or misrepresentations in the Account Agreement) are subject to the arbitration provision. *AT & T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 649 (1986) ("[I]t has been established that where the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that an order to arbitrate the particular grievance should not be denied unless it may

---

[2]      This issue is for the arbitrator to decide (*see infra* Section IV.C*)* but is discussed here because it is obvious.

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage.") (internal citation omitted); *Robinson v. Faegre Baker Daniels*, *LLP*, No. 3:13-cv-0086-HRH, 2014 WL 1277226, at \*6 (D. Alaska Mar. 26, 2014) (language in clause providing that "any controversy or claim arising out of or related to this Agreement, or breach thereof, shall be settled by arbitration" was found to be "quite broad").

### C. To the Extent Plaintiff Disputes the Existence, Validity, or Scope of the Arbitration Agreement, the Arbitrator Must Decide those Issues.

Even if there were a genuine dispute about the existence, enforceability, or scope of the arbitration provision, these disputes would be for the arbitrator to decide. The parties "clearly and unmistakably" delegated all questions of arbitrability to the arbitrator in two ways. *First*, the arbitration provision has an enforceable delegation clause. *See* Keller Decl. ¶ 4, Ex. 1 at p. 14; *Mohamed v. Uber Techs., Inc.*, 848 F.3d 1201, 1208-09 (9th Cir. 2016); *Momot v. Mastro*, 652 F.3d 982, 988 (9th Cir. 2011) (language "delegating to the arbitrators the authority to determine 'the validity or application of any of the provisions of' the arbitration clause constitutes 'an agreement to arbitrate threshold issues concerning the arbitration agreement'") (internal citation omitted). *Second*, the arbitration provision incorporates the AAA Rules for consumer disputes, *see* Keller Decl. ¶ 4, Ex. 1 at p. 13, which provide "[t]he arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the *existence, scope, or validity* of the arbitration agreement or to the arbitrability of any claim," AAA, Consumer Arbitration Rules, Rule 14(a) (emphasis added). *See Brennan v. Opus Bank*, 796 F.3d 1125, 1130-31 (9th Cir.

2015) (holding district court did not err in concluding that the parties' incorporation of the AAA rules constituted clear and unmistakable evidence of their intent to submit the arbitratbility dispute to arbitration); *Galilea, LLC v. AGCS Marine Ins. Co.*, 879 F.3d 1052, 1061 (9th Cir. 2018). Accordingly, questions for the arbitrator would include (1) whether the arbitration provision exists, *see* AAA Rule 14(a); (2) the scope of the arbitration provision; and (3) whether the arbitration provision is unconscionable. *See, e.g., Garcia v. Dell, Inc.*, 905 F. Supp. 2d 1174, 1179 (S.D. Cal. 2012).

**D.    If the Court Chooses to Decide Whether an Agreement to Arbitrate Exists, Then It Should Find Plaintiff Agreed to Arbitrate as a Matter of Law.**

Under the FAA, the Court must compel arbitration where the party seeking such an order shows "(1) the existence of a valid, written agreement to arbitrate; and [] (2) that the agreement to arbitrate encompasses the dispute at issue." *Ashbey v. Archstone Property Mgmt., Inc.*, 785 F.3d 1320, 1323 (9th Cir. 2015). Plaintiff may attempt to argue that she did not agree to arbitrate. She did.

*1.    Plaintiff agreed to the arbitration provision by maintaining her account.*

When she became a member, Plaintiff agreed that Alaska USA could make changes to the terms and conditions of accounts "from time to time" without "member approval." Keller Decl. ¶ 4, Ex. 1 at p. 2. That is what happened.

Alaska USA amended the Account Agreement to add the arbitration provision in February 2019.  It was not required to provide notice of this change, but on May 6, 2019, Alaska USA added a "pop up" notice to the log in page of its online banking system.  *Id.* ¶

5. The pop up notice informed Plaintiff that her "Share Account Disclosure Statements have been updated" and included hyperlinks to the revised Account Agreement. *Id.* Plaintiff was required to at least look at and then close the pop up notice to navigate to her online banking pages. *Id.* She did just that. According to Alaska USA's records, Plaintiff navigated to pages on UltraBranch on May 6 and May 8, 2019. *Id.* at ¶ 6. Thus, she saw the pop up notice and, at a minimum, elected to close it and proceed to her account through UltraBranch.

Therefore, Plaintiff agreed to the arbitration provision by clicking the "Close" button of the pop up notifying her of the change to her Account Agreement and thereafter maintaining and making use of the privileges of her account. *See, e.g.*, *West v. Uber Techs.*, No. 18-CV-3001-PSG-GJS, 2018 WL 5848903, at *5 (C.D. Cal. Sept. 5, 2018) (finding plaintiff assented to updated terms where, after receiving an email that Uber had updated its Terms of Use, plaintiff continued using the app and Uber's service for a year); *Epp-Stowers v. Uber Techs., Inc.*, No. 16-cv-06652-RS, 2019 WL 3430566, at *4 (N.D. Cal. July 30, 2019) (concluding plaintiff adequately consented to terms of service, including arbitration provision where terms of service link had been displayed without obstruction and plaintiff used Uber's services several times afterwards, even though plaintiff's testimony was that he did not recall seeing it); *Dorman v. Charles Schwab Corp.*, Case No. 18-15281, ___ F. App'x ___, 2019 WL 3939644, at *1 (9th Cir. Aug. 20, 2019) (reversing denial of defendant's motion to compel individual arbitration where plaintiff participated in investment plan for nearly a year after the plan was amended to include an arbitration

provision); *Ackerberg v. Citicorp USA, Inc.*, 898 F. Supp. 2d 1172, 1176 (N.D. Cal. Oct. 16, 2012) ("Numerous courts have found that continued use or failure to opt out of a card account after the issuer provides a change in terms, including an arbitration agreement, evidences the cardholder's acceptance of those terms.").

Plaintiff may argue she is not bound by the arbitration provision because she closed out of the pop up without reading it or the hyperlinked agreement. That argument fails as a matter of law because a party "cannot avoid the terms of a contract on the ground that he or she failed to read it" before agreeing to it. *Moule v. United Parcel Serv. Co.*, No. 1:16-cv-00102-JLT, 2016 WL 3648961, at *7 (E.D. Cal. July 7, 2016) (citation omitted) ("Though Mr. Brown elected to 'merely hit the prompts' rather than read the notifications, Plaintiff fails to show 'surprise' because the terms were not hidden from view or drafted in 'fine-print terms.'"). "Constructive notice is generally clear where the user is actually required to, and does click a button explicitly agreeing to the terms of the contract, even if the user does not actually read the terms of services." *Weber v. Amazon.com, Inc.*, No. CV 17-8868-GW(Ex), 2018 WL 6016975, at *7 (C.D. Cal. June 4, 2018); *Cordas v. Uber Techs., Inc.*, 228 F. Supp. 3d 985, 988 (N.D. Cal. 2017) (finding consumer assented to Uber's terms and conditions where, when he downloaded the app, he had to click "DONE" on screen stating that by creating an account, consumer agreed to service's terms and conditions, and there was nothing indicating consumer's phone settings prevented display of the registration process screen, even though plaintiff claimed he never saw the terms of service alert); *Coppock v. Citigroup, Inc.*, No. 11-1984, 2013 WL 1192632, at *4 (W.D.

Wash. Mar. 22, 2013) ("Plaintiff's failure to recall [whether she read the change in terms or received the change in terms] does not create a genuine issue of fact as to whether she received the notice of change in terms and subsequent card agreements and whether by her actions she assented to those terms."). The hyperlink to the updated Account Agreement was not "buried at the bottom of the page or tucked away in obscure corners of the website where users are unlikely to see it," but rather, was in a can't-miss pop up Plaintiff had to see and close in order to access her account on UltraBranch. *Compare Nguyen v. Barnes & Noble Inc.*, 763 F.3d 1171, 1177 (9th Cir. 2014).

Accordingly, because Plaintiff received the arbitration provision, is legally deemed to have read it, and continued being an Alaska USA member thereafter, Plaintiff agreed to arbitrate.

> ## 2. *Any argument that singles out the arbitration provision is preempted.*

To the extent Plaintiff argues that this change in terms was ineffective because it involved an agreement to arbitrate that should have been subject to greater notice, that argument is preempted by the FAA. "Courts may not . . . invalidate arbitration agreements under state laws applicable *only* to arbitration provisions." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996); *Concepcion*, 563 U.S. at 339 (arbitration agreements may not be invalidated "by defenses that apply only to arbitration or that derive their meaning from the fact that an agreement to arbitrate is at issue"). But that is exactly what Plaintiff would be trying to do here. By arguing that Alaska USA was required to do more with its change in terms because an arbitration provision was involved (rather than a different type of provision), Plaintiff would be asking the Court to improperly hold

11

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

arbitration agreements to a higher standard. Such "[a]n arbitration-specific rule . . . would be preempted by the FAA." *O'Connor v. Uber Techs., Inc*., 904 F.3d 1087, 1093 (9th Cir. 2018).

> **E.   If the Court Chooses to Decide Whether an Agreement to Arbitrate Exists, Then It Should Find the Arbitration Provision Is Valid and Enforceable.**

As directed by the United States Supreme Court, "courts must place arbitration agreements on equal footing with other contracts and enforce them according to their terms." *Concepcion*, 563 U.S. at 339. Although the federal policy underlying the FAA ensures the enforceability of arbitration agreements, the "'save upon such grounds' clause has been construed to mean that state law grounds for refusing to enforce contracts in general will also apply to arbitration clauses, while state law grounds particular to arbitration clauses cannot so serve." *Gibson v. Nye Frontier Ford*, Inc., 205 P.3d 1091, 1095-96 (Alaska 2009). Only "defenses that are traditionally grounds for the revocation of a contract: fraud, duress, and unconscionability" may be applied to invalidate arbitration agreements without contravening the FAA. *Hudson v. Citibank (South Dakota) NA*, 387 P.3d 42, 48 (Alaska 2016); *Alli v. ASRC Energy Servs., LLC*, No. 3:16-cv-00280-TMB, 2017 WL 9854547, at *3 (D. Alaska Sept. 29, 2017); *Snead v. Wright*, No. 3:19-cv-00092 JWS, 2019 WL 3412906, at *1 (D. Alaska July 28, 2019); *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 687 (1996). Plaintiff cannot argue fraud or duress, but may attempt to argue the arbitration provision is unconscionable. She would be wrong.

"[I]t is a matter of hornbook law that the doctrine of unconscionability recognizes both a substantive class of unconscionable actions . . . and a procedural class of events . .

12

." *Alaska Int'l Const., Inc. v. Earth Movers of Fairbanks, Inc.*, 697 P.2d 626, 643 (Alaska 1985). But "[a] contract or a contractual term is not unconscionable merely because the parties to it are unequal in bargaining position, nor even because the inequality results in an allocation of risks to the weaker party." *Nicdao v. Chase Home Finan.*, 839 F. Supp. 2d 1051, 1074 (D. Alaska 2012) (citation omitted). Rather, "[u]nconscionability has generally been recognized to include an absence of meaningful choice on the part of one of the parties *together with* contract terms which are unreasonably favorable to the other party." *Municipality of Anchorage v. Locker*, 723 P.2d 1261, 1265-66 (Alaska 1986) (emphasis added). The arbitration provision here is neither procedurally nor substantively unconscionable.

### 1. The arbitration provision is not procedurally unconscionable.

In terms of the procedural element, the arbitration provision is not unconscionable because the circumstances do not indicate a vast disparity of bargaining power coupled with terms unreasonably favorable to the stronger party. *OK Lumber Co., Inc. v. Alaska R.R. Corp.*, 123 P.3d 1076, 1081 n.17 (Alaska 2005). The arbitration provision is not a product of oppression or surprise due to unequal bargaining power. The contract was hardly "take-it-or-leave it"; there are dozens of credit unions and banks competing for Plaintiff's business. "There is no evidence that [Plaintiff] lacked meaningful choice. There is no evidence that [s]he did not freely become a member of" Alaska USA or continue with her account after the arbitration provision was implemented. *Organ v. Conner*, 792 F. Supp. 693, 697 (D. Alaska 1992).

13

*Coleman v. Alaska USA Federal Credit Union*
Case No. 3:19-cv-00229-HRH

And the arbitration provision was hardly hidden; it is a conspicuous part of the Account Agreement that includes bolded text and takes up two full columns. Alaska USA also gave Plaintiff adequate notice of the arbitration provision by including a pop up on the log in page of its online banking system, which notified Plaintiff that the terms of the Account Agreement had changed and included a hyperlink to the revised agreement. *See supra* Section IV.D.1. "The fact that [Plaintiff] did not fully investigate the terms applicable to [] members does not make the" provision unconscionable. *Organ*, 792 F. Supp. at 697.

2.      *The arbitration provision is not substantively unconscionable.*

The arbitration provision does not contain one-sided provisions historically criticized by courts in the Ninth Circuit. *See, e.g., Zaborowski v. MHN Gov't Servs., Inc.*, 936 F. Supp. 2d 1145, 1153-55 (N.D. Cal. 2013) (provisions imposing shorter statute of limitations, unilateral choice of arbitrator, fee-shifting, required payment of filing fee, and limiting available remedies were substantively unconscionable). The arbitration provision is as consumer-friendly as possible and makes it easy, or easier, for a member to pursue a claim in arbitration as it would be to sue in court. For instance, all of the filing, administration, and arbitration fees are to be paid by Alaska USA. Plaintiff is also entitled to any remedies she might otherwise be entitled to in court, including injunctive relief. And if the plaintiff resides in one of several states, the arbitration is to take place in that state.

Further, under now-settled federal law, parties may limit their ability to arbitrate on behalf of a class. *Concepcion*, 563 U.S. at 352. In other words, arbitration clauses with class-action waivers, like the one here, must be enforced as written. That includes giving

14

effect to the parties' decisions about whether claims may be joined, consolidated or asserted on a class basis. *Id.* at 343-46; *Rent-A-Center, W., Inc*., 130 S. Ct. at 2775-79. To the extent a state's law requires otherwise, that law is preempted by the FAA. *Concepcion*, 563 U.S. at 342-52.

### F. The Court Should Dismiss This Case Pending Arbitration.

Sending Plaintiff's claims to arbitration is mandatory, but deciding how to handle this lawsuit pending the outcome of that arbitration is discretionary. This Court can stay the case pending the outcome of arbitration. *Countrywide Home Loans, Inc. v. Mortg. Guar. Ins. Corp*., 642 F.3d 849, 854 (9th Cir. 2011) ("FAA § 3 requires courts to stay litigation of arbitral claims pending arbitration of those claims in accordance with the terms of the agreement."). Or the Court can dismiss the case without prejudice. *Sparling v. Hoffman Constr. Co*., 864 F.2d 635, 638 (9th Cir. 1988) (holding arbitration clause "did not limit the court's authority to grant a dismissal in this case").

Because Plaintiff's claims must be arbitrated on an individual basis, there is not reason to stay her putative class action case. It should be dismissed pending the arbitration. Plaintiff or Alaska USA can file a new action to enforce the award.

## V. CONCLUSION

Based on the foregoing, Alaska USA respectfully requests that the Court grant the motion compelling arbitration of the claims asserted by Plaintiff and dismiss this case pending the completion of the arbitration.

Respectfully submitted this 16th day of October, 2019.

> **STOEL RIVES LLP**
> Kevin M. Cuddy
>
>
> By: /s/ Kevin M. Cuddy
>     Kevin M. Cuddy (Bar No. 0810062)
>
> Attorneys for Defendant
> ALASKA USA FEDERAL CREDIT UNION

## CERTIFICATE OF SERVICE

I hereby certify that on October 16, 2019, I caused a true and correct copy of the foregoing document to be filed with the Clerk of the Court for the United States District Court – District of Alaska by using the CM/ECF system. Participants in Case No. 3:19-cv-00229-HRH who are registered CM/ECF users, and whom are listed below, will be served by the CM/ECF system.

Daniel I. Pace
PACE LAW OFFICES
101 E. 9TH Ave., Ste 7A
Anchorage, AK 99501
Dan@PACELAWOFFICES.com
*Attorney for Plaintiff Christine Coleman*

/s/ Kevin M. Cuddy
Kevin M. Cuddy

17