WO       IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

CHRISTINE COLEMAN, on behalf of herself )
and all others similarly situated, )
)
                              Plaintiff, )
)
    vs. )
)
ALASKA USA FEDERAL CREDIT UNION, )
) No. 3:19-cv-0229-HRH
                              Defendant. )
_____)

O R D E R

Motion to Dismiss

Defendant moves to dismiss plaintiff's complaint.[1] This motion is opposed.[2] Oral argument was requested by defendant and the court had granted that request pending its review of the briefing on the instant motion.[3] Having now completed that review, the court deems oral argument unnecessary.

---

[1] Docket No. 32.

[2] Docket No. 34.

[3] Docket No. 38.

Background

Plaintiff is Christine Coleman. Defendant is Alaska USA Federal Credit Union. Plaintiff has a checking account with defendant.[4]

Plaintiff alleges that "[o]n November 15, 2018, [she] attempted a small payment to Safeway in the amount of $61.57."[5] This was apparently an Automated Clearing House ("ACH") transaction.[6] "ACH transactions are electronic payments made from one bank account to another and involve one party providing their account number and routing number. Common ACH transactions include online bill pay. . . ." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 426 (6th Cir. 2018).

Plaintiff alleges that "Alaska USA rejected" the Safeway payment "due to insufficient funds in [her] account and charged her a $25 NSF Fee for doing so."[7] "Plaintiff does not dispute this initial fee, as it is allowed by Alaska USA's Account Documents."[8] Plaintiff alleges however that without her knowledge and not at her request, "eleven days later, on November 26, 2018, Alaska USA processed the same item yet again, and again rejected the

---

[4]Class Action Complaint at 4, ¶ 17, Docket No. 1.

[5]Id. at 4, ¶ 18.

[6]Id. at 3, ¶¶ 9, 12.

[7]Id. at 4, ¶ 19.

[8]Id.

transaction due to insufficient funds and charged [her] <u>another</u> $25 NSF Fee."[9] Plaintiff alleges that she was thus "charged . . . $50 in NSF Fees [in an] attempt to process a single payment."[10] Plaintiff alleges that this breached her agreement with defendant because "Alaska USA's Account Documents state that it will charge $25 per item that is returned due to insufficient funds."[11]

Plaintiff commenced this putative class action on August 21, 2019. She asserts breach of contract, breach of the implied covenant of good faith and fair dealing, unjust enrichment, and Alaska Unfair Trade Practices Act ("UTPA") claims against defendant.

Defendant now moves to dismiss all of plaintiff's claims.

## Discussion

"To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" <u>Zixiang Li v. Kerry</u>, 710 F.3d 995, 999 (9th Cir. 2013) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009)). "A claim is facially plausible 'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" <u>Id.</u> (quoting <u>Iqbal</u>, 556 U.S. at 678). "The plausibility standard requires more than the sheer possibility or conceivability that a defendant has acted

---

[9]<u>Id.</u> at 4-5, ¶ 20.

[10]<u>Id.</u> at 5, ¶ 21 (emphasis omitted).

[11]<u>Id.</u> at 5, ¶ 26; 8, ¶ 37.

unlawfully." Id. "'Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.'" Id. (quoting Iqbal, 556 U.S. at 678). "[T]he complaint must provide 'more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do.'" In re Rigel Pharmaceuticals, Inc. Securities Litig., 697 F.3d 869, 875 (9th Cir. 2012) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "In evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the light most favorable to the plaintiff." Adams v. U.S. Forest Srvc., 671 F.3d 1138, 1142-43 (9th Cir. 2012). "However, the trial court does not have to accept as true conclusory allegations in a complaint or legal claims asserted in the form of factual allegations." In re Tracht Gut, LLC, 836 F.3d 1146, 1150 (9th Cir. 2016). "When ruling on a Rule 12(b)(6) motion to dismiss, if a district court considers evidence outside the pleadings, it must normally convert the 12(b)(6) motion into a Rule 56 motion for summary judgment[.]" United States v. Ritchie, 342 F.3d 903, 907 (9th Cir. 2003).

<u>breach of contract claim</u>

"In order to assert a claim for breach of contract, a plaintiff must generally allege: (1) existence of a contract; (2) breach; (3) causation; and (4) damages." Nicdao v. Chase Home Finance, 839 F. Supp. 2d 1051, 1068 (D. Alaska 2012). Defendant argues that plaintiff has

not stated a plausible breach of contract claim because there has been no breach of the contract.

Plaintiff attached a Share Account Disclosure Statement to her complaint.[12] This was, however, a Share Account Disclosure Statement for business organizations. The Share Account Disclosure Statement that governed plaintiff's personal account is the one for "Member" accounts.[13] The Member Share Account Disclosure Statement (referred to hereafter as the "Account Agreement") defines a "debit" as a "withdrawal" and includes "ACH Payments" in its list of "debits".[14] The Account Agreement provides that defendant

> pays debits based on the account's available funds. If available funds are not in the account when a debit is presented for payment, the Credit Union will attempt to pay the item using any or all of the applicable overdraft programs for which the member has enrolled or is qualified to receive.
>
> The fee for account overdrafts are listed on the 'Schedule of Share Account Service Fees and Charges' page of this disclosure.[[15]]

---

[12]Exhibit A, Class Action Complaint, Docket No. 1.

[13]Exhibit A, Declaration of Nancy K. Martin [etc.], Docket No. 33. The court may consider this document without converting the instant motion to dismiss into a motion for summary judgment, even though it was not attached to the complaint. See Ritchie, 342 F.3d at 908 ("court may . . . consider certain materials—documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice—without converting the motion to dismiss into a motion for summary judgment").

[14]Exhibit A at 9, 11, Martin Declaration, Docket No. 33.

[15]Id. at 11.

The Account Agreement further provides:

> Nonsufficient Funds (NSF) Activity: If available funds are not in the account when a debit is presented for payment, and Overdraft Protection or Courtesy Pay are not available, the item will be returned unpaid. A fee will be assessed for each returned item.[16]

The Schedule of Share Account Service Fees and Charges provides that the NSF fee for a "[c]heck or other debit returned unpaid for lack of sufficient funds" is "$25.00 per item[.]"[17]

Defendant's argument that plaintiff has not alleged a plausible breach of contract claim raises a question of contract interpretation. "The goal of contract interpretation 'is to give effect to the reasonable expectations of the parties.'" Graham v. Municipality of Anchorage, 446 P.3d 349, 352 (Alaska 2019) (quoting Stepanov v. Homer Elec. Ass'n., 814 P.2d 731, 734 (Alaska 1991)). The court "determine[s] 'the parties' reasonable intentions by looking to the language of the disputed provision and other provisions, relevant extrinsic evidence, and case law interpreting similar provisions.'" Id. (quoting Flint Hills Res. Alaska, LLC v. Williams Alaska Petroleum, Inc., 377 P.3d 959, 975 (Alaska 2016)). The court "look[s] to the language of the contract as a whole, the objects sought to be accomplished by the contract, the circumstances surrounding its adoption, and case law interpreting its provisions to ascertain the reasonable expectations of the parties." Monzingo v. Alaska Air Group, Inc., 112 P.3d 655, 660 (Alaska 2005).

---

[16]Id. at 12.

[17]Id. at 15.

"If the contract language is not ambiguous," the court "'decide[s] the meaning of the contract as a matter of law.'" Thomson v. Thomson, 394 P.3d 604, 607 (Alaska 2017) (quoting Krushensky v. Farinas, 189 P.3d 1056, 1060 (Alaska 2008)). "'An ambiguity exists only where the disputed terms are reasonably subject to differing interpretation after viewing the contract as a whole and the extrinsic evidence surrounding the disputed terms.'" Id. at 607-08 (quoting Villars v. Villars, 277 P.3d 763, 768-69 (Alaska 2012)). Contract "interpretation becomes a task for the trier of fact when the parties present extrinsic evidence to clarify a contract's meaning, when this evidence points toward conflicting interpretations of the contract, and when the contract itself is reasonably susceptible of either meaning." Little Susitna Const. Co. v. Soil Processing, Inc., 944 P.2d 20, 23 (Alaska 1997).

The parties focus on the portion of the Account Agreement that provides:

> Nonsufficient Funds (NSF) Activity. If available funds are not in the account when a debit is presented for payment, and Overdraft Protection or Courtesy Pay are not available, the item will be returned unpaid. A fee will be assessed for each item.[18]

Defendant argues that a "debit" includes an ACH transaction and a reasonable interpretation of the above provision is that when an ACH payment is "presented for payment" and "returned unpaid", it has a right to impose an NSF fee for "each" such item. Defendant argues that even if the court were to consider the word "item" in isolation, as plaintiff suggests, the result would be the same. Defendant argues that the ordinary meaning of

---

[18]Account Agreement at 12, Exhibit A, Martin Declaration, Docket No. 33.

"item" is "'an individual thing . . . singled out from an aggregate of individual things (as those being enumerated in a bill of inventory or similar list.'"[19] Defendant contends that each time Safeway submitted plaintiff's authorized ACH transaction to be paid, it presented a unique trace number, which was processed individually. In other words, defendant argues that each submission of plaintiff's Safeway ACH transaction was a separate "item." As such, defendant contends that the Account Agreement allows it to charge a $25.00 fee each time an ACH transaction is presented for payment and there are insufficient funds in the member's account.

Plaintiff contends that the first sentence in the above provision merely states that defendant has the ability to return items unpaid. And, plaintiff contends that the second sentence says that defendant can assess "a fee" for each "item." But, this sentence does not say, according to plaintiff, that defendant can assess "a fee each time an item is returned," which is what defendant is arguing. Plaintiff argues that assessing "a fee" for "each item" is not the same thing as assessing "a fee" for "each item returned." Plaintiff argues that a reasonable interpretation of the Account Agreement is that it does not authorize defendant to assess an NSF fee on the same "item" more than once. Plaintiff argues that "item" has a well-understood meaning in the banking industry, which is "an accountholder instruction

---

[19]Defendant Alaska USA Federal Credit Union's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) at 9, Docket No. 32 (quoting Webster's (Third) New International Dictionary at 1203 (1966)).

for payment."[20] Plaintiff contends that this is consistent with the Alaska statutory definition of "item", which is "an instrument or a promise or order to pay money handled by a bank for collection or payment[.]" AS 45.04.104(a)(9). Plaintiff contends that a merchant's resubmission of an accountholder's original instruction for payment is not an "item" because there was not a separate instruction for payment. Plaintiff argues that a merchant's resubmission is not an order to pay money, but a third party's request to collect a previous order made by an accountholder. Thus, plaintiff argues that the Account Agreement does not allow defendant to charge an NSF fee when an ACH transaction is resubmitted for payment.

Both parties' interpretations of the Account Agreement are plausible. It is plausible that a member could have expected to only be charged one NSF fee when she only gave one authorization for an ACH transaction, no matter how many times the merchant presented the transaction for payment. On the other hand, it is plausible to view the Account Agreement as allowing defendant to charge an NSF fee each time it received a request for payment and there were insufficient funds in the account. Because it is plausible that the Account Agreement "is reasonably susceptible of either meaning[,]" Little Susitna Const. Co. 944 P.2d at 23, the contract may be ambiguous and defendant's motion to dismiss plaintiff's breach of contract claim must be denied.

---

[20]Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 10, Docket No. 34 (emphasis omitted).

The court is mindful that plaintiff has offered extrinsic evidence, in the form of a later account agreement,[21] in support of her argument that the Account Agreement is, at the very least, ambiguous. While the court has not considered this extrinsic evidence on this motion to dismiss, "[a] 'court may not dismiss on the pleadings when one party claims that extrinsic evidence renders the contract ambiguous.'" Woods v. Google, Inc., 889 F. Supp. 2d 1182, 1191 (N.D. Cal. 2012) (quoting A. Kemp Fisheries Inc. v. Castle & Cooke, Inc., 852 F.2d 493, 496 n.2 (9th Cir. 1988)).

The parties have also both relied on the National Automated Clearing House Association (NACHA) rules, which plaintiff agreed would govern ACH transactions,[22] in support of their interpretations of the Account Agreement. Defendant contends that each time a merchant creates an ACH transaction in an attempt to get paid and "presents" that ACH transaction to defendant, that is a "debit" because if defendant pays the ACH transaction, plaintiff's account will be debited. Under the NACHA rules, a merchant may try up to three times to get paid when a member, such as plaintiff, initiates an electronic transaction. In other words, according to defendant, plaintiff authorized Safeway to make up to three ACH transactions and defendant was permitted to charge plaintiff an NSF fee for

---

[21]Exhibit 5, Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss, Docket No. 34.

[22]The Account Agreement provides that the "Operating Rules of the National Automated Clearing House Association . . . are applicable to ACH transactions involving your account." Account Agreement at 10, Exhibit A, Martin Declaration, Docket No. 33.

each of those ACH transactions if there were not sufficient funds in her account when Safeway presented the transaction for payment.

Plaintiff does not dispute that the NACHA rules allow a merchant, such as Safeway, to make up to three attempts to obtain payment. However, plaintiff contends that the NACHA rules require that when a merchant "re-presents" a request for payment, "the request must 'contain the identical data as the original' entry and include the label 'RETRY PYMT.'"[23] Plaintiff contends that under NACHA terminology, "a merchant's request for payment via the ACH network, pursuant to an instruction for payment by the consumer, is called an 'Entry,' which <u>shall be deemed an 'item</u>' within the meaning of" the UCC."[24] Plaintiff argues that the NACHA rules thus make clear that a "re-presented" entry is just another request for payment of the original entry, not a separate, new entry or item.

While the court could consider the NACHA rules on a motion to dismiss without converting it into a motion for summary judgment, neither party has provided the court with a copy of the relevant rules. How these rules might play into the interpretation of the Account Agreement is thus a matter for another day.

Plaintiff also argues that the Account Agreement's other uses of the term "item" supports her interpretation of the contract. Plaintiff points out that the Schedule of Fees in the Account Agreement uses the term "item" at least 15 other times and she argues that "in

---

[23]Plaintiff's Response and Memorandum of Law in Opposition to Defendant's Motion to Dismiss at 7 (quoting NACHA Rules App. 4; § 2.12.4.2).

[24]Id. at 8 (quoting NACHA Operating Rules & Guidelines § 8.33 (emphasis added)).

no other circumstance could an accountholder incur more than one fee on the underlying cause for the fee[.]"[25] For example, the Schedule of Fees lists the following: 1) Cashier's Check . . . $2.00 per item, 2) Money order . . . $1.50 per item, 3) Express Mail . . . $15.00 per item, and 4) Photocopy unrelated to credit union business . . . $0.25 per item.[26] Plaintiff argues that these "per item" promises mean exactly what they say, that a single fee is possible when a member requests a cashier's check or a money order or requests that something be sent by express mail. Plaintiff argues that it follows that a reasonable person would expect that defendant would charge only one NSF fee per member request to make payment, not multiple NSF fees for the same request.

Plaintiff also argues that interpreting the Account Agreement as permitting defendant to assess only one NSF fee per request for payment is consistent with the other provisions in the "Account Overdrafts" section of the contract. That section provides:

> An Overdraft Services Fee will be charged for each item Alaska USA pays which results in a negative available balance.
>     \* \* \*
> A Courtesy Pay Fee will be charged for each item Alaska USA pays which results in a negative available balance.
>     \* \* \*
> A[n NSF] fee will be assessed for each returned item.[27]

---

[25]Id. at 11.

[26]Account Agreement at 14-15, Exhibit A, Martin Declaration, Docket No. 33.

[27]Id. at 12.

Plaintiff argues that plainly for the first two, only one fee can be charged and thus a reasonable person would read the contract to mean that only one NSF fee can also be charged.

As defendant points out, nothing in the contract suggests that when an act can occur more than once, there cannot be a fee charged each time the act occurs. But, on the other hand, the fact that in some instances, the Account Agreement uses "item" to refer to an act that can only occur once does suggest that it is plausible that the contract is susceptible to two reasonable interpretations and thus may be ambiguous.

The court has also considered the case law cited by the parties. Defendant relies primarily on Lambert v. Navy Federal Credit Union, Case No. 1:19-cv-103-LO-MSN, 2019 WL 3843064, at *5 (E.D. Va. Aug. 14, 2019), in which the court found that the contract language at issue unambiguously allowed the credit union to charge multiple NSF fees for the same transaction. Plaintiff cites to a number of cases in which the courts found the contract language at issue to be ambiguous. Given that other courts have found similar contractual language to be both unambiguous and ambiguous, this case law provides little guidance to this court on a motion to dismiss.

In sum, the Account Agreement may be ambiguous, thereby making plaintiff's breach of contract claim plausible. Defendant's motion to dismiss plaintiff's breach of contract claim is denied.

<u>breach of the implied covenant of good faith and fair dealing claim</u>

"An implied covenant of good faith and fair dealing exists in all at-will contracts." <u>Ramsey v. City of Sand Point</u>, 936 P.2d 126, 133 (Alaska 1997). "A party must act in subjective good faith, meaning that it cannot act to deprive the other party of the explicit benefits of the contract, and in objective good faith, which consists of acting in a manner that a reasonable person would regard as fair." <u>Casey v. Semco Energy, Inc.</u>, 92 P.3d 379, 384 (Alaska 2004). "[T]he purpose of the covenant is to effectuate the reasonable expectations of the parties, not add to them and 'cannot be interpreted to prohibit what is expressly permitted.'" <u>Id.</u> at 384–85 (quoting <u>Ramsey</u>, 936 P.2d at 133).

Plaintiff alleges that defendant has acted in bad faith by "assess[ing] two or three NSF Fees for a single attempted payment."[28] Defendant argues that plaintiff's bad faith claim is implausible because it did not breach its agreement with plaintiff by charging her two NSF fees. In short, defendant argues that plaintiff's bad faith claim fails if her breach of contract claim fails.

As discussed above, plaintiff's breach of contract claim is plausible. Accordingly, her breach of the implied covenant of good faith and fair dealing claim is also plausible. Defendant's motion to dismiss plaintiff's breach of the implied covenant of good faith and fair dealing claim is denied.

---

[28]Class Action Complaint at 11, ¶ 50, Docket No. 1.

### unjust enrichment claim

"Unjust enrichment is a broad equitable concept that underlies various legal theories and remedies. It is most closely linked with the law of restitution and implied (quasi) contracts." Alaska Sales and Service, Inc. v. Millet, 735 P.2d 743, 746 (Alaska 1987). The three elements of an unjust enrichment claim are:

> 1) a benefit conferred upon the defendant by the plaintiff; 2) appreciation by the defendant of such benefit; and
> 3) acceptance and retention of the defendant of such benefit under such circumstances that it would be inequitable for him to retain it without paying the value thereof.

George v. Custer, 862 P.2d 176, 180 (Alaska 1993). "Generally, a '[p]laintiff may not rely on a theory of implied contract where a valid, express contract governs.'" Nicdao, 839 F. Supp. 2d at 1071 (citation omitted).

Plaintiff brings her unjust enrichment claim "in the alternative and . . . concedes that this claim cannot survive if [her] contractual claims succeed."[29] Given that there is no dispute that the Account Agreement is a valid, enforceable contract, plaintiff's unjust enrichment claim is not plausible. Defendant's motion to dismiss plaintiff's unjust enrichment claim is granted. Plaintiff is not given leave to amend as to her unjust enrichment claim because amendment would be futile. See V.V.V. & Sons Edible Oils Limited v. Meenakshi Overseas, LLC, 946 F.3d 542, 547 (9th Cir. 2019) (quoting Chappel v. Lab. Corp.

---

[29]Id. at 17, ¶ 75.

of Am., 232 F.3d 719, 725–26 (9th Cir. 2000)) ("'[a] district court acts within its discretion to deny leave to amend when amendment would be futile'").

UTPA claim

"[A] prima facie case of unfair or deceptive acts or practices under the UTPA requires proof of two elements: '(1) that the defendant is engaged in trade or commerce; and (2) that in the conduct of trade or commerce, an unfair act or practice has occurred.'" Kenai Chrysler Center, Inc. v. Denison, 167 P.3d 1240, 1255 (Alaska 2007) (quoting State v. O'Neill Investigations, Inc., 609 P.2d 520, 534 (Alaska 1980)). While "[t]he Alaska Supreme Court has never held that the Alaska UTPA applies to the typical run-of-the-mill breach of contract[,]" this court has predicted that "it is more likely than not that, if presented with that precise question, the Alaska Supreme Court would hold that the Alaska UTPA does not." Brady v. E&Y Development, Inc., Case No. 3:07-cv-00245-TMB, 2010 WL 11512284, at *4 (D. Alaska July 29, 2010). Rather, courts have held that in order to state an unfair trade practices act claim based on a breach of contract, "the breach must be both knowing and intended to secure unbargained-for benefits to the detriment of the other party." City of Revere v. Boston/Logan Airport Assocs., LLC, 416 F. Supp. 2d 200, 209 (D. Mass. 2005) (citation omitted).

Plaintiff alleges that defendant "engaged in an unfair or deceptive act or practice when [it] misrepresented and/or omitted in the account documents its true NSF Fee practices and

breached the express terms of the account documents."[30] This is a conclusory allegation that appears to be nothing more than a run-of-the-mill breach of contract claim. As currently pled, plaintiff's complaint does not state a plausible UTPA claim. Defendant's motion to dismiss plaintiff's UTPA claim is granted. Plaintiff is, however, given leave to amend as to her UTPA claim as it is possible that plaintiff could state a plausible UTPA claim.

### Preemption

Finally, to the extent that plaintiff's state law claims are based on a failure to disclose, defendant argues that these claims are expressly preempted by federal law. The court need not consider this argument, however, because plaintiff's claims are not based on a failure to disclose.

### Conclusion

Defendant's motion to dismiss is granted in part and denied in part. It is denied as to plaintiff's breach of contract and breach of the implied covenant of good faith and fair dealing claims. It is granted as to plaintiff's unjust enrichment and UTPA claims. These claims are dismissed. Plaintiff is not given leave to amend her unjust enrichment claim but is given leave to amend her UTPA claim. Should plaintiff elect to file an amended complaint, that complaint shall be filed on or before May 14, 2020.

The court would add one final note that it has some qualms about whether it has jurisdiction of this case. Plaintiff has alleged that the court has original jurisdiction pursuant

---

[30]Class Action Complaint at 19, ¶ 84, Docket No. 1.

to the Class Action Fairness Act ("CAFA").[31]  "CAFA confers original jurisdiction to the district courts 'of any civil action in which the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, and is a class action in which—any member of the class of plaintiffs is a citizen of a State different from any defendant.'" Baumann v. Chase Inv. Services Corp., 747 F.3d 1117, 1120 (9th Cir. 2014) (quoting 28 U.S.C. § 1332(d)(2)-(A)).  "The claims of class members may be aggregated to determine whether the amount in controversy requirement has been satisfied."  Id. (citing 28 U.S.C. § 1332(d)(6)).  "The class also must have at least 100 members."  Id. (citing 28 U.S.C. § 1332(d)(5)(B)).  The court has some concerns as to whether the amount in controversy could be met here, but assumes for now that it has been since defendant, which is in the best position to know the amount in controversy, has not challenged the court's jurisdiction.

DATED at Anchorage, Alaska, this 14th day of April, 2020.

/s/ H. Russel Holland
United States District Judge

---

[31]Id. at 2, ¶ 6.